James Calvin TURNER, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–79–580.

Court of Criminal Appeals of Oklahoma.

Jan. 10, 1981.

---

Lewis M. Watson, Ada, for appellant.

Jan Eric Cartwright, Atty. Gen., State of Oklahoma, Michael Jackson, Asst. Atty. Gen., Mary Bryce Leader, Legal Intern, Oklahoma City, for appellee.

## OPINION

BRETT, Presiding Judge:

James Calvin Turner was convicted of unlawful delivery of a controlled drug after he gave some Demerol to two narcotics agents in Ada. The delivery occurred after Turner received a telephone call from a man named Johnson, a drifter whom Turner had befriended. Prior to this drug transaction, Turner had arranged for Johnson to obtain room and board from Turner's mother, a ceramic shop owner who had been disabled by an accident. In exchange, Johnson had agreed to assist Mrs. Turner in maintaining her business. Unbeknownst to Turner, Johnson was cooperating with the agents when he complained to Turner about feeling pain. Turner took the Demerol to the appointed motel room, but Johnson was not there. Instead, his two "friends" were there. They accepted the Demerol and offered payment, which Turner refused. The three men then toured the town of Ada.

Beyond this undisputed core of the story, the testimonies differed greatly. Turner said he gave the men one tablet of Demerol, which he took from his mother's prescription; the agents said he brought a small vial of liquid Demerol and a syringe. Turner said he refused payment because he was just doing a favor for a friend; the agents said he refused payment because the drug was a sample given in prospect of a larger sale. Turner said that during the tour of Ada the two men repeatedly asked him questions about drug sources and other criminal activity, questions which he did not answer; the agents said that Turner volunteered much information about drugs and crimes which could be committed.

Three assignments of error are asserted. The only one necessitating discussion pertains to the introduction of evidence of other crimes.

The crime charged was delivery of one unit of Demerol to undercover agents on or about July 1, 1977. Additional irrelevant evidence included the following allusions:

During the State's case-in-chief, one agent testified that on July 1, 1977, the appellant had mentioned the fact that marijuana was available and that he knew a specific source where it could be obtained. Later that night, the agent said he asked the appellant for Demerol, and the appellant expressed regret that he hadn't known earlier that the agent wanted the drug because he had been in possession of eighty (80) hits. The agent testified that the appellant agreed to sell him Demerol and Valium the following day. Then the agent testified that the appellant had not accepted payment because this delivery was but a token of the larger sale planned for the next day.

When this witness was cross-examined, the defense attorney asked what had prompted the appellant to come to the motel. Despite the fact that the State's case for delivery of an unlawful drug involved the activity of an informant with whom the appellant had allegedly agreed to consummate a drug transaction on July 1, 1977, the agent injected an evidentiary harpoon in his reply to the defense attorney by testifying that the appellant had agreed to bring a silencer to the motel. The prejudicial effect of reference to a silencer and the lack of pertinence of a silencer to the drug offense is apparent.

Still in presenting its case-in-chief, the State elicited testimony from the second agent regarding large quantities of Demerol in the appellant's possession prior to the crime and plans for subsequent deliveries of drugs.

In presenting its defense, the defense recalled the second agent. That agent again interjected a harpoon concerning the silencer that the appellant was allegedly going to obtain at a later meeting. Then, on cross-examination by the assistant district attor-

ney, the same agent injected evidence of an alleged plan to commit a robbery. The agent began his story in the context of a conversation between the appellant and the informant. But when a hearsay objection was sustained, the agent changed his story to a conversation which had occurred between him and the appellant. The testimony continued to the effect of appellant's plan to rob a gambling establishment, to which the appellant's attorney objected as unrelated and prejudicial. The court erroneously overruled the objection, and the evidence which followed was sufficiently prejudicial to require reversal of this conviction. The agent elaborated on the alleged plan, which included the appellant's statement that the proprietor would have to be killed and that the appellant would accomplish this by injecting battery acid into his veins. He also planned to have a friend drug the customers so that they could be robbed. Further, the agent related appellant's plan to rob a bar in Ada. Again, the assistant district attorney asked the agent about the silencer, at which point the agent elaborated on the appellant's plans for using the silencer.

Although there were few objections recorded by the defense, those objections were entered at crucial points and were in reference to alleged criminal plans by the appellant, which activity was completely unrelated to the crime charged. Furthermore, the transcript is so replete with evidence of other crimes that we are compelled to rule on the propriety of that evidence. See *Cobbs v. State*, 629 P.2d 368 (Okl.Cr. 1981).

■ Evidence of other crimes is admissible under limited circumstances and for specific purposes. See *Burks v. State*, 594 P.2d 771 (Okl.Cr.1979); *Roulston v. State*, 307 P.2d 861 (Okl.Cr.1957); Laws 1978, ch. 285, § 404, now 12 O.S.Supp.1980, § 2404 ¶ B. The improper testimony in the present case concerned plans and uncommitted acts. However, the State cannot inject evidence of a defendant's criminal character and claim that technically it is not evidence of

other crimes just because there has been no actual crime committed. The evidence of an alleged plan or of a defendant's criminal propensities can be just as harmful and create as much prejudice. See *Selfridge v. State*, 617 P.2d 237 (Okl.Cr.1980).

■ Further, the State has argued that any evidence tending to establish the defendant's predisposition to deliver an unlawful drug would be admissible as rebuttal to a defense of entrapment. However, the most prejudicial comments were not related to the drug offense, and the majority of the remarks were made during the State's case-in-chief and cannot now be explained as rebuttal to a defense which had not yet been raised.[1] Applying the same principles to the facts of this case as are applied to other crimes evidence, this Court must conclude that there is not a sufficient nexus to tie these purported criminal plans and statements to the delivery of the Demerol and that this testimony was not admissible under any of the five exceptions to the other crimes prohibition. *Selfridge v. State*, supra, and *Atnip v. State*, 564 P.2d 660 (Okl.Cr.1977).

A careful examination of the evidence admitted in the trial of this cause reveals not only that the evidence of other crimes was devoid of probative value with regard to the crime charged, but also that it was ". . . a subterfuge for showing to the jury that the defendant is a person who deserves to be punished." *Burks*, supra, at 775. The improper testimony was so potentially damaging to the appellant that it must be said that he was denied his due process right to be tried for only the offense charged.

Further, the record discloses that, although an instruction on the limiting effect of prior convictions was given, no instruction on other crimes was given either at the time the evidence came in or at the close of the case. See *Burks*, supra.

The judgment and sentence is Reversed and Remanded to the district court for proceedings consistent with this opinion.

1. The State claims that an alleged allusion to entrapment by defense counsel in the opening statement sufficiently established the defense of entrapment. However, an opening statement does not constitute evidence.

CORNISH, J., concurs.

BUSSEY, J., not participating.