**Davin Jake DOUMA, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

No. F–85–382.

Court of Criminal Appeals of Oklahoma.

Jan. 29, 1988.

Lisbeth L. McCarty, Asst. Appellate Public Defender, Norman, for appellant.

Michael C. Turpen, Atty. Gen., P. Kay Floyd, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BUSSEY, Judge:

The appellant, Davin Jake Douma, was convicted in the District Court of Tulsa County, Case No. CRF–84–1661, of First Degree Murder for which he received a sentence of life imprisonment. He appeals raising eleven assignments of error.

The evidence reveals that on April 27, 1984, Mark Ledford, a twenty-one year old college student, was shot in a wooded area of southeast Tulsa ten times, and died of the wounds. Alex Breitbart, who was fifteen years old at the time of the homicide, testified that he was at the appellant's home when the appellant received a telephone call at about 4:30 p.m. After the call the sixteen year old appellant told Breitbart that they were going partying with a friend that night. After another telephone conversation at approximately 6:00 p.m. the appellant told Breitbart they were going to "roll a queer tonight." (Tr. 181). Seven teenagers testified that they saw the appellant and Breitbart at the Family Q–Spot that evening, and the appellant had displayed a .38 Chief Special handgun bragging that he was going to "waste a queer."

At about 9:45 the appellant and Breitbart were picked up at a nearby convenience store by Mark Ledford. Ledford then drove to pick up eighteen year old Mathew McManus, another friend of the appellant's. Ledford then drove to an area they called the Woods where, after they left the car, according to a plan the appellant made with Breitbart and McManus, those two separated from the appellant and Ledford on the pretext of searching for beer which

was hidden earlier. Breitbart and Mc-Manus heard five shots. The appellant then called them over to him. He reloaded, went back to Ledford, who was moaning, and shot him another five times. They then took Ledford's keys and wallet, took his car to another part of town, wiped off the fingerprints, poured alcohol inside the car, and left it at an apartment parking lot.

About five days later, the appellant and Breitbart met two of the teenage girls they had talked to the night of the homicide and told them that the appellant had killed Ledford. At the trial, however, the appellant testified that he had not shot Ledford more than one time. He stated that Ledford had attempted to coerce him into a homosexual act and so he shot Ledford in the shoulder. He then gave the gun to McManus to hold Ledford while the appellant went to get the car, and McManus shot Ledford the other nine times.

Rebuttal witnesses testified that they lived near the area of the homicide and heard five or six shots, that a short period of time passed, and then five or six more shots were fired.

■ The appellant first argues that the Reverse Certification Statute, 10 O.S.1981, § 1104.2,[1] is unconstitutional because it shifts the burden of proof to the juvenile. The appellant requests that we reconsider our holding in *Coats v. Rakestraw*, 610 P.2d 256 (Okl.Cr.1980). In that case we held that the statute creates a classification which bears a rational relationship to an important legislative objective, and that is the protection of the public. We found that the implementation of the statute should act as a deterrent to those who believe that sixteen and seventeen year old persons may violate the law with impunity. *Coats*, 610 P.2d at 259. We find no reason to change our holding. Accordingly, this assignment of error is meritless.

■ The appellant next claims that the trial court erred by denying his motion to exclude the testimony of two prosecution witnesses on the grounds that the events to which they would testify were one week after the murder and therefore irrelevant, and also objected that any other testimony of these two witnesses would be cumulative. The witnesses testified that on the night that Mark Ledford was killed, they heard the appellant state that he was going to "waste a queer," and that a little less than a week later he told them that he had killed Mark Ledford. "[A]dmissibility of evidence at trial is within the trial court's discretion, and the court's ruling is not reversible where there is no showing of prejudice to the defendant or breach of his fundamental rights." *Cooper v. State*, 671 P.2d 1168, 1173 (Okl.Cr.1983). Whether or not the testimony concerning the appellant's statements about his intentions to "waste a queer" was needless presentation of cumulative evidence was for the trial court to decide. *See* 12 O.S.1981, § 2403. We find that the trial court's decision to admit that testimony was not an abuse of discretion, nor was it an abuse of discretion to admit the testimony concerning appellant's subsequent inculpatory statements. This assignment of error is likewise meritless.

■ In his third assignment of error the appellant maintains that the trial court improperly refused to allow individual and private voir dire concerning the prospective jurors' views on the death penalty. The appellant acknowledges that this Court has previously held that there is no right to private and individual voir dire. *Irvin v. State*, 617 P.2d 588 (Okl.Cr.1980). The appellant, however, claims that the prospective jurors were prejudiced by the answers given by those who were being questioned, and he cites pages in the transcript. An examination of these pages reveals that those being questioned only stated that

---

1. This statute was subsequently amended: 1985 Okla.Sess.Laws, Ch. 278, § 1, and 1986 Okla. Sess.Laws, Ch. 179, § 2, and is now codified as 10 O.S.Supp.1986, § 1104.2. The 1985 amendment added subsection E making an order certifying a person as a child or denying the request for certification as a child pursuant to subsection D, a final order. The 1986 amendment changed one of the enumerated charges in Subsection A from rape in the second degree to rape in the first degree.

they were familiar with facts in the case because of reading articles in the newspapers, or seeing information about the case on television. One woman stated that her son was a friend of the deceased's brother. No facts or details were asked or given. None of the answers had substance which would prejudice the other prospective jurors. We have previously held that jurors are not required to be totally ignorant of the facts and issues. They must only be able to act impartially and fairly upon the matters submitted to them. *Nauni v. State*, 670 P.2d 126 (Okl.Cr.1983). This assignment of error has no merit.

■ In the appellant's fourth assignment of error he contends that two jurors should have been excused sua sponte because of preconceived ideas expressed during voir dire. An examination of the transcript reveals that further questioning by defense counsel cleared up any question of bias on the part of the two jurors, neither of which defense counsel attempted to remove from the jury. Being satisfied with the jury as seated, defense counsel waived her last three peremptory challenges. Where a defendant does not exhaust all of his peremptory challenges, the defendant may not be heard to allege on appeal possible bias of any juror. *Stott v. State*, 538 P.2d 1061 (Okl.Cr.1975). We find no merit in this assignment of error.

■ In his fifth assignment of error the appellant urges that certain photographs admitted at trial were prejudicial and designed to inflame the passion and prejudice of the jury. The pictures of which the appellant complains show the body of the victim at the crime scene, but are neither gruesome nor prejudicial as the appellant claims. "The introduction of photographs taken of a homicide victim subsequent to the homicide is largely within the discretion of the trial court, and unless this discretion is abused it will not be cause for reversal." *Smith v. State*, 727 P.2d 1366, 1370 (Okl. Cr.1986). We find no abuse of that discretion. Furthermore, as the evidence against the appellant is overwhelming, and the appellant received the minimum sentence for First Degree Murder, no prejudice can be found. This assignment of error is utterly meritless.

■ The appellant complains in his sixth assignment of error that evidence of other crimes was admitted over his objections. During the examination of Breitbart by the prosecutor, the witness testified that the day of the murder when he and the appellant were at the appellant's house, the appellant told him that they were going to "roll a queer" that night. The prosecutor asked Breitbart what that meant, if he had ever done that before, and what the appellant had to to say about it. After an objection and a conference at the bench, the prosecutor asked the witness where he had learned the meaning, and he replied, "From Davin." Shortly thereafter, when discussing the murder weapon, the prosecutor asked the witness where the gun came from, and Breitbart answered, "Davin had traded a stolen radio that we got at Tulsa." Defense counsel's objection was overruled. Appellant claims that through Breitbart's testimony the jury was advised that the appellant had been involved in some sort of attack on homosexual men, and, in some way, was involved with stolen merchandise. In the first instance there is no indication from the record that any crime was committed. Where there is an implication of another crime obvious only to defense counsel, such evidence is not excludable on the grounds that it is evidence of another crime. *Burks v. State*, 568 P.2d 322 (Okl.Cr.1977). Regarding the second instance, even if we agreed that the appellant had been implicated in the crime of knowingly concealing stolen property, the admission of the evidence would have been harmless error. The State's case against him was overwhelming and we believe that the jury would have returned a verdict of guilty without the evidence complained of. *See Burks v. State*, 594 P.2d 771 (Okl.Cr.1979). This assignment of error is meritless.

■ The appellant alleges as his seventh assignment of error that he was denied his Sixth Amendment right to confrontation of the witnesses against him. After the trial judge had excused a witness following de-

fense counsel's cross-examination, and the prosecutor had declined redirect examination, defense counsel changed her mind and asked the judge if she could ask an additional question. The judge stated that she could not, that he had excused the witness. The court noted for the record that the witness was to the door of the courtroom going out when the request was made. To claim that the appellant was denied the right of confrontation is utterly meritless. Direct examination of the witness was transcribed on five pages, while the cross-examination was contained on ten pages of transcript. Extent of cross-examination is left to the sound discretion of the trial court, and unless that ruling is a clear abuse of discretion, and the defendant suffers manifest prejudice, we will not disturb the ruling. *Hall v. State*, 698 P.2d 33 (Okl.Cr.1985). Furthermore, defense counsel failed to make an offer of proof, and so this Court has no way to determine the issue raised. This Court will not presume error from a silent record. *Bradshaw v. State*, 697 P.2d 168 (Okl.Cr.1985).

■ Two of the appellant's assignments of error concern jury instructions. First, the appellant argues that the trial court erred by not instructing on all theories of manslaughter which the evidence supported. The trial court gave an instruction on manslaughter in the first degree committed in a heat of passion. *See* 21 O.S. 1981, § 711(2). The record also reveals that the trial court asked defense counsel if she wished the court to give an instruction concerning manslaughter in the first degree perpetrated unnecessarily either while resisting an attempt by the person killed to commit a crime, or after such attempt shall have failed. *See* 21 O.S.1981, § 711(3). The judge was advised that this was not the theory of the defense in the case. The appellant now argues that subsection three should have been instructed upon.

Defense counsel specifically stated that the trial court had prepared the instructions requested and that she had no further instructions to offer. Having specifically accepted the instructions as submitted to the jury concerning manslaughter in the

first degree, any error concerning those instructions is therefore waived on appeal. *Thompson v. State*, 705 P.2d 188 (Okl.Cr. 1985).

■ Defense counsel's only objection to an instruction was concerning the instruction of flight. Concerning that issue this Court has held:

Flight of a defendant is a circumstance tending to prove guilt, and where the State offers evidence of the conduct of defendant tending to prove flight, and the defendant offers evidence in explanation of such conduct, it is proper to submit the question of flight to the jury as a matter of fact for their determination, and to instruct them that, if they find beyond a reasonable doubt that the defendant fled, it may be considered as a circumstance tending to prove guilt.

*Padillow v. State*, 501 P.2d 837, 841 (Okl. Cr.1972), quoting *Bruner v. State*, 31 Okl.Cr. 351, 238 P. 1000 (1925). The State presented evidence that the appellant, Breitbart, and McManus had fled to Texas. The appellant presented an explanation. The issue was then properly presented to the jury as a question of fact. *See Padillow*, 501 P.2d at 841. We find no merit in this assignment of error.

■ The appellant submits in his tenth assignment of error that defense counsel's performance was deficient. Because defense counsel failed to make an offer of proof (see seventh assignment of error) and because counsel did not exercise all of her peremptory challenges (see fourth assignment of error), the appellant claims that counsel's performance was ineffective. In *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) the Supreme Court of the United States discusses ineffective assistance of counsel. Although we could cite many portions of that opinion, the case warns against using hindsight to conclude that a particular act or omission of defense counsel was unreasonable merely because the defense proved unsuccessful. *Strickland* holds that a reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable profession-

al assistance...." *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. The appellant has clearly not overcome this presumption. Defense counsel's conduct concerning the offer of proof may as easily be explained as a judgment by counsel that the question she wished to ask was not so material that her failure to ask it would affect the outcome of the trial. An alternate explanation of her decision not to exercise all of her peremptory challenges could be that her observation of the demeanor of the prospective jurors along with the answers to the questions posed to them had convinced her that an unbiased and fair jury had been chosen. This assignment of error has no merit.

The appellant's final assignment of error asserts that the cumulative effect of the errors committed during the trial denied him a fair trial. We have consistently held that where there is no individual error, there can be no error by accumulation. *Master v. State*, 702 P.2d 375 (Okl.Cr.1985).

Accordingly, the judgment and sentence is AFFIRMED.

BRETT, P.J., concurs.

PARKS, J., specially concurs.

PARKS, Judge, specially concurring:

Although I concur in the majority opinion, I do not retreat from the views expressed in my opinions in *Tibbetts v. State*, 698 P.2d 942 (Okl.Cr.1985), and *Bass v. State*, 733 P.2d 1340 (Okl.Cr.1987). Finally, with regard to the admission of other crime evidence concerning the "stolen radio," I believe that the limiting instruction given by the trial judge was sufficient to cure any error in light of the strong evidence of guilt. Accordingly, I concur.